We'll call the next case, J.B. Eminer v. Osnock. May it please the Court, my name is David McMain and I represent the appellants or the defendants below, which include Lancaster County caseworker Joseph Troy and caseworker Darren Dubay. I would like to reserve five minutes for rebuttal, if it may please the Court. There's really five issues presented in the appeal and there's one that's I think the primary and most compelling issue and that is the application of this Court, which was then affirmed by the Supreme Court's decision in Florence, which held that correctional facilities in that particular situation was Burlington County, New Jersey's, blanket strip search of all pre-trial detainees being placed in the general population. The underlying district court found that there was no reported decisions on whether Florence applies to juvenile detention facilities such as my client and therefore presents a novel or unresolved issue of law. Believe that there's several reasons why Florence does apply to juvenile facilities, both in Florence recognized, the Supreme Court recognized and the Third Circuit recognized that courts should give great deference to correctional administrators in determining safety risks. The Court recognized that correctional professionals are in a better position to make decisions on issues such as safety and security. The Court also recognized that upon intake, all new intakes present risks both to the other population, the correctional staff, as well as themselves. Same risks, I would argue, apply in a juvenile detention facility. What are those risks? Well, that there's injuries or medical issues that need to be addressed. That weapons could be smuggled into the facility. The weapons could be guns, it could be knives, it could be all kinds of other things and there is a record of this. Is the case still supporting your position that the dangers in juvenile facilities are equivalent to those in general prisoner population facilities? There are, Your Honor. There are actually two cases, there's only two cases on the issue of whether you can conduct strip searches at a juvenile facility and they both predate Florence. The one case is called NG versus Connecticut, it's a Second Circuit decision from 2004. The intake, the two people that were being intaked in that situation are much, from a gut level, are much less of a risk. There was a 14-year-old female runaway and a 13-year-old female truancy. And what the Court looked at, and they used the term special needs, so when you're doing this balancing test between the need for corrections officials to have a secure, safe environment versus the privacy rights of the detainee, they went to this analysis, there's kind of a special needs exception or special needs analysis when it comes to juveniles. On one hand, gut reaction, I think for most lay people, is they're not adult offenders or juvenile offenders, so we need to be sensitive to that, but on the other hand, the State has, stands in loco parentis when we're dealing with juvenile offenders, that the responsibility on corrections officials is greater to ensure protection. Interestingly, that same thought is codified in the Pennsylvania statute, specifically the Juvenile Act, which requires juvenile facilities such as Lancaster County Youth Intervention Center to also look for signs of abuse. That statutorily we're responsible not only for ensuring there's not weapons, contraband, injuries and such, but also that we look for signs of abuse. And the second circuit in this NJ case compared juvenile detention to any other form of penal institution. So you're proposing the extension of Florence to juvenile detention facilities? I am, and I think, Your Honor... Let me ask you this, because here you're talking about a 12-year-old. I understand the charges against him were quite serious, but not every 12-year-old is a serious offense. What if you have a 12-year-old that's picked up for, let's say, shoplifting? It's considered a petty offense, but would that person be subject under this blanket policy to an intrusive body search? If they were going into general population, where they would be exposed to other detainees, they would. And the Florence Court, Supreme Court in Florence, addressed the same thought, and that is, the defense for this, let's say, 12-year-old, and your position is that that person, without any reasonable suspicion, without any inquiry, without any balancing of the need for security versus the intrusion, that person would automatically be subject to an intrusive body search? If they're going into general population, and if they're going into custody, where else would they go? Well, if, for example, the Supreme Court, Justice Alito, and I think my esteemed colleagues in the Congress, said there may be exceptions to this rule in Florence, that if someone is going to be placed in general population, there may be exceptions. And why is, and I think it may allude to the question Your Honor is asking, someone's brought in and they're temporarily detained, so that they're bailed out, or there's not a judicial determination. In this case, a court ordered that this young man be put in the facility over the weekend until a hearing could be held, given the seriousness of the charge. But if there was a situation where someone wasn't to be placed in general population, that may be an exception. Or the other exception that Judge Alito allowed for was, well, if there hasn't been a judicial Is a 12-year-old, is a 12-year-old who shoplifts likely to be put into general detention? I think it depends on what the court order says. It depends on whether or not the facility has a holding area that keeps people temporarily. And I think this whole, the gut reaction, I think, as a layperson, who doesn't work in a correctional facility, is the very scenario and hypothetical that Your Honor mentioned. The Supreme Court talked about this, and they said, listen, these are difficult and unpleasant decisions. Being in a correctional facility is unpleasant. However, we're going to kind of strike a bright-line rule, and that is if someone's going into general population, they afford the same risks that someone with serious offenses. There's a number of cases that talk about it, that if they're going to go into general population, whether it be a major offense or a minor offense. The plaintiff in the Florence case was detained for a failure to pay traffic citations, which later turned out to be incorrect. And the court said, we're going to strike a real bright line. If they're going into general population, the risks don't change. The risks aren't greater or lesser, they just present the very same risks. How is it justified in this case, I mean, from your standpoint, given that the detention occurred three weeks after the offense, or not three weeks? Well, I would say two things. Number one, I haven't read anywhere, and I've filmed a lot of the class action strip search cases for adult facilities. I've not seen anywhere where it says if a crime had been committed two weeks or six months earlier, it's somehow stale and doesn't raise the same kind of concerns. There's no case law I don't see where if someone's charged with a violent crime, just because they're not taken into custody for three weeks doesn't make the risk any lesser. So what the Supreme Court in Florence said is that to draw a bright line so we don't have this constant subjective decision where we have to look at different situations and it's a 12-year-old subject versus a 14-year-old versus a 16-year-old, we're placing an awful lot of subjectivity, an awful lot of discretion in the hands of corrections. Further, in this particular case, which is not unusual, the two officers who were involved in the intake and the one who conducted the search didn't know the age of the crime. All they knew was this young man was brought in pursuant to a court order for terroristic threats, a crime which later he did what's called a consent agreement. It's essentially a no-contest claim in the adult context. But do you think about a special needs assessment before the full search is done? Well, I don't. Are you referring to a reasonable suspicion? So I think the special needs concept really is courts recognizing that we're not going to have as much of this analysis. If we go to the reasonable suspicion, which was the analysis the courts used prior to Florence that you need to go through and identify are there reasonable, particularized things for this case that you can point to, the difficulty there and one of the concerns the Supreme Court and this Court had in Florence is it leads to a lot of subjectivity, it could lead to disparate results. If a 12-year-old in this situation who comes from a two-parent home from the suburbs, is likely less of a risk than a kid who's being brought in from foster care who committed a similar offense. There ought to be the same result regardless of some of these vagaries that may occur with intake. And so getting to your question about reasonable suspicion, even if in this case Florence didn't apply and we looked at the reasonable suspicion, there's a checklist that many adult and juvenile facilities use to identify what are some of the objective things we can point our staff to determine if there's reasonable suspicion. In this case the checklist or the 12 questions, and the questions were developed with counsel's involvement and Pennsylvania was a statewide with all the correctional facilities. How, before you, I know your time is running, but how have other courts treated this idea of making Florence applicable to juvenile detention facilities? There is no case law. The two cases I discussed, NG and Smook, which is an Eighth Circuit case, NGs from the Second Circuit pre-Florence, both said that strip search for all juveniles coming in for intake was permissible, it was not unconstitutional, and the intake on those two were much less serious here. It was, as I said, a 14-year-old runaway in one case and a 16-year-old curfew violator. There have been, and I know my time is up and I finished my, this court and two other courts have used Florence, not to apply it or not to extend it to juvenile facilities, but the concept and the policy behind Florence. One is a case called Small v. Wetzel, it's a Third Circuit case from 2013, Citation 528 Federal Appendix, where this court said strip search during lockdown fell within the confines of the same policy of Florence. Florence was limited, one might argue, and I think my opponent will argue, to just intake, just adult. The Middle District, in a recent case involving Susquehanna County, 2015 Westlaw 114376 Middle District, said that the search of inmates after they left the correctional facility but came back in after a visit or a medical appointment were subject to strip search, for the same reasons that Florence talked about. Okay, we're going to have to finish up. Okay, thank you. We have to save time for rebuttal. This then would be a big step in this case. It will be. Okay. Mr. Allen? Point of order. My name is Kevin Allen, and I represent the plaintiff in this action. I want to address a couple things that counsel argued, and essentially to distinguish Florence. It's been discussed, and I know you're well aware, that Florence dealt with adults, and I think that's important, a very important distinction, and I think we have to consider the impact that a strip search may have on a child, a 12-year-old. In this case, the offense, serious, as you said, there's no dispute. It did involve threats, and what the officers knew when they conducted the search was that the charges, that is, terroristic threats and a summary harassment, so there's a misdemeanor and a summary harassment, and their policy is to essentially strip search everybody. Florence talks about exceptions, and I understand that Justice Alito, in his opinion, described a couple of the exceptions that he would consider, and the majority even recognized that there may be exceptions, but of course they didn't address them because that wasn't involved in that case. I would suggest that juveniles is one such exception that the court should consider. I think to suggest that a blanket strip search policy for any child that comes into custody is outrageous. You know, there's another language in Florence by the court that courts viewing these things should give a great deal of deference to the prison officials and administrators because they're the ones in the front line. They're the ones who know what is needed and what isn't, and we ought to give them a great deal of deference, and that's one of the reasons, that's one of the rationales for the ruling in Florence. Why is it any different than a juvenile institution? Well, Your Honor, I respect that, and I do understand that there's a great responsibility not just to my client but to all of the juveniles that are in the facility, and that's probably why the court felt that they should have some deference in deciding these things. I agree that they should have some leeway in making that decision, but to make it a blanket policy is what troubles me. There should be some reason why. Even if you don't make it a blanket policy, here's a kid who is accused of threatening a girl with a knife, for one thing, of playing with a homemade flamethrower, and isn't this the type of person who you would be concerned might have some sort of weapon concealed in his clothing when he is admitted to the general facility? So if you say, we're going to make a checklist and go through the checklist and only search people, only search kids who seem like significant threats, I think this kid seems like a significant threat whether it was two weeks ago or two days ago that the incident happened. I understand that concern, Your Honor, but in this case, what the officers knew at the time was his charges. They didn't have the details of the charges. Maybe that's a problem with the system, but just assume that they did know that he was The search has to have some relationship to what you're searching for. The type of search that they conducted, and of course the court has to accept the facts in the light most favorable to the plaintiff in this case, the plaintiff testified that he was told to disrobe, bend over, and spread his cheeks. I'm not sure what the purpose of that is. In fact, the director of the facility says that type of search serves no purpose. So there's two issues, I guess. One is, should a blanket strip search policy be allowed? And two, this particular search that was done, should that be allowed? I hope that answers your question. The Florence decision also mentioned communicable diseases, infections. Yes. How are you going to do that without a search, without a strip search? None of these people are trained medical people. I don't know how they're going to check for medical diseases anyway. It almost seems that there should be some basis for a suspicion that they have either abuse or some disease before they have a 12-year-old take all of his clothes off. And it's not just his outer clothing. Well, they have a responsibility, not just to the 12-year-old, but they have a responsibility to the rest of the juveniles in the detention facility. Well, I suggest, Your Honor, that if that's truly the basis for the search, then they need a medical professional to perform an examination. These case workers have no medical training. They're not doctors to detect disease. Well, that's part of the basis for the search. Of course, the other one is the introduction of contraband drugs and weapons and so forth. Well, I would suggest that, and perhaps this is my own bias, that the examination for disease is rather pretextual. It's really not the real reason they're doing this. They're doing this because they want to make sure there's no contraband introduced to the facility. And I understand that that's probably a legitimate purpose. It's probably a bigger reason. Right. But I just don't see that the search that they conducted in any way would determine whether my client suffered with an infectious disease. There's one thing in this case that struck me, is that your client is very clever. Having been able to create a flamethrower using a tube, a can of hairspray, and a lighter, being able to craft a knife and threaten somebody with it, that's not something that any ordinary 12-year-old can do. And it would seem to me that this sort of policy was very adaptable to somebody like that to keep out that kind of contraband. But the policy would allow every person to be searched that way. But if we're talking about special needs or a specific reasonable suspicion in this case, that's kind of a different issue. The reasonable suspicion for my particular client, there may be some suspicions that he carried something in. So they can take his clothes, and they can search his clothing. He can stand in his underwear, for goodness sakes. But to have him bend over and not go into all the details again... Well, I mean, one can hide weapons, including, let me just say, between your butt cheeks, right? Well, I don't know. I think you can. But I believe there is some case law that suggests that that happens, yes. Yeah, right. And that's a good way to find out if it's, in fact, a situation. Well, I go back then to what Director Frederick said in his testimony, that the type of search that was done, there was no purpose for it. The type of search, first of all, that they authorized does not include what was done to my client. They authorized him to... The search typically requires him to disrobe and squat down and cough, not the additional things that I discussed earlier. You don't disagree with the record that says that the whole thing took about 90 seconds? No, in fact, my client said that the process was very short. I think he testified that it didn't take a long time. The whole procedure, he said, was 5 to 10 minutes. I think the question of how long he was completely disrobed was asked of a correctional officer and they said 90 seconds, and we did not dispute that. You don't think that bears on our determination whether it was really an intrusive search or not? It may. It may be one of the things for you to consider. But there are many other factors to consider, and the most important of those, I think, is this is a child. And if we're going to allow blanket strip searches, does it stop at 12? Does it go to 10? Does it go beyond that? Now, I don't know how often those sort of would be in a facility. Well, I mean, who are you going to put into general detention? I think that's the question, that if a juvenile has committed an offense serious enough that a juvenile is going to be put in general detention, then should not the juvenile be searched? And if it's a 4-year-old, you're not going to put them in general detention. If it's a 6-year-old, you're not going to put them in general detention. Isn't that the dividing line we need, rather than among those who are put in general detention, who will be searched and who won't be searched? That may be your honor. I don't know what that dividing line is, because when we asked the corrections officers, have you ever conducted a strip search on a 12-year-old before, they said never. They never had to do that before. They've had older individuals in this facility, primarily. Sorry, what was that? They've had older individuals in this facility, and perhaps that's an issue as well, should this person have been placed in general population. But that issue is no longer in the case, I gather. Well, right now the summary judgment motion did state that, I'm sorry, the judge of the order found that we couldn't pursue the wrongful detention. Right. Yes. I would imagine that this was his very first detention. I don't know that for a fact, but I would suspect so. But I also would imagine that there are some juveniles which are so-called repeat offenders, so they've been in and out. But I would also understand that the detention officials have no way of knowing what a juvenile's record is, or may not have access to it. So doesn't it make sense to let them make the decision and let them adopt uniform policies? Because they don't know the dangerous element of each and every juvenile that is brought into a facility. I don't know that they would know the entire record of the juvenile, but certainly they should know what he was charged with and what the offense was, and they should be able to articulate some reasonable suspicion. And in this case, as Judge Roth pointed out, maybe they had it. They wrote down in their checklist that they did not have a reasonable suspicion that he was hiding any contraband. They specifically said that in their checklist. So they had no suspicion, but they searched him anyway. This was merely a standard policy that they were implementing? Well, actually, some of the witnesses testified that they had a checklist that had to be followed, and if some of those things were checked, then they would do the search. But the two corrections officers, DeBay and Choi, testified that they had the checklist, but they strip-searched everybody they came in. There was no discretion on their part. Your Honor, there's an issue I did want to get to briefly, and that is qualified immunity. Because I know counsel is probably going to talk about that when he comes back up here, but I wanted to make sure that I at least presented some information on it. Qualified immunity, of course, may apply if it could be argued that every reasonable officer would not know what the standard was. And in this case, the controlling law at the time was not Florence. The controlling law at the time of this case was Bell v. Woolfish, which did require that there be some reasonable suspicion. And in the case where they say there's no reasonable suspicion, then there shouldn't be a search. Where was that case from? U.S. Supreme Court. Say the case again. Say the case again. A Bell v. Woolfish. Bell-Bell? Bell-Bell. Bell. B-E-L-L. That was controlling law concerning searches in detention facilities? I was just going to respond to that. I was anticipating your question. It was controlling law with regard to adults, okay? So that's the law with regard to adults in corrections facilities. There is no controlling law in juvenile facilities before that time, other than some of the cases that Mr. McMahon cited that require reasonable suspicion. Would that be qualified and immediately appropriate? Well, I think that the only basis that an officer would have for making a decision, one way or the other, would be what's out there. And what's out there is a case involving adults that says you need reasonable suspicion, and other cases that say you need reasonable suspicion. So that is the only law out there. There's not an acceptance of a blanket policy until Florence came along. So that was a controlling law. Thank you, Your Honor. All right. Very well. Thank you. Mr. McMahon? I just want to hit on a couple of points. Let me work in reverse. The qualified immunity, actually the wallet wasn't controlling because it came from other circuits, but the only cases out there pre-Florence, talking about juveniles, both said that you could conduct strict searches of juveniles. I suppose if we were to agree with you and say that Florence applies to juvenile detention facilities, we don't worry about qualified immunity. No, you would not reach that issue. But if we don't apply Florence, then you argue that since the law was not clearly established, qualified immunity applies. Correct. Under both the NG case out of the Second Circuit and Smook out of the Sixth Circuit or Eighth Circuit. So do they involve reasonable suspicion? No, what they both said was that because a juvenile facility has even greater responsibilities than an adult facility, they said that a strip search of a juvenile going into general population didn't require any analysis. If they're going into general population, right-line rule, they can be strip searched. How about making him bend over and spread his cheeks rather than making him squat? Is that a significant? I don't think it's a distinction at all. Neither one are particularly pleasant, but nor is going to a juvenile detention facility because you committed a terroristic threat. The procedure used in this particular case was the exact procedure that was used in Florence, the exact procedure that was used in some of these juvenile cases which predated Florence. What about the statements by the detention center people that that's not normally what they did? The director said that the particular way that the spreading partner, by the way, there's no touching whatsoever in this, it's all visual, was different than, as your Honor described, the two different descriptions. I don't think there's a difference in reality as to it being any less intrusive or more intrusive or unpleasant. It's part of what corrections facilities, be it adult or juvenile, do to ensure that not only are the other residents safe, the staff is safe, and this particular person, while it seems counterintuitive, also is safe. I want to go back to the Florence because I think that while there's not been a case that's addressed whether Florence is applicable, there hasn't been a case that says it isn't. If you look at the law prior, the only two reported decisions both said that blanket strip search in a juvenile facility, if you're going to general population, is constitutional. If you look at the definition of prison under federal law, and I cite two different statutes, they define prison broadly, it's a facility that incarcerates or detains juveniles or adults. They define inmates under federal law as any person, anyone to describe, including adjudicated delinquents. So the federal statutes treat, if you're incarcerated, you're incarcerated as one and further, in Florence itself. In the majority opinion by Justice Kennedy, he specifically said, and I quote, the term jail is used here in a broad sense to include prison and other detention facilities. Now, he didn't say other juvenile detention facilities, but he purposely chose the word broad, and it was intended, I would argue, to apply to any detention or correctional facility. The risks at a juvenile facility are no different than they are in an adult facility. In fact... And you think that a juvenile, a 12-year-old, should undergo the same type of intrusive body search as an adult in an adult jail facility? I do. I believe the risks are the same. I think the testimony in the case, in this record, are the same. In fact, the risk may even be greater. One, because they're responsible under statutory law for finding abuse. Second, teenagers, and thankfully I'm past those years with my four children, but they're impetuous. They are more irrational, for the most part, than adults. And so the risks aren't any lesser. It certainly is unpleasant. This is difficult work, both trying to make a decision on an issue, if we use the hypothetical of a 12-year-old who's brought in for shoplifting versus this case where we have a terroristic threat intake. But Florence keeps talking, all the other cases talk about, that we're going to set a line so we don't get into this endless, what if the facts are this and what if the facts are that, because it allows for an awful lot of subjectivity on the corrections staff. It makes for a lot of cases then that have to be decided case by case, fact by fact. Supreme Court said we're going to set a bright line rule. They're going to general population. We're going to defer at that point the correctional professionals who do this and know the risks. And we're going to give them that tool and balance the test or balance in favor of allowing the exact same kind of search that was done here. And for those various reasons, I would argue and respectfully request that Florence does apply to this case. Very good. Thank you, Mr. McMain. And Mr. Allen, thank you as well.  We'll take the case under advisement. And we'll